IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10-CR-30006 |
| ) | |
| STANLEY E. VAUGHN, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This cause comes before the Court on Defendant Stanley Vaughn's Motion to Suppress Evidence (d/e 14) (Motion to Suppress). The motion is fully briefed, and pursuant to Local Rule 72.1, the District Judge has referred the matter to me for Report and Recommendation. See Text Order dated April 22, 2010. After carefully considering all of the submissions of the parties, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Motion to Suppress be DENIED.

I.  BACKGROUND

Defendant Stanley Vaughn is charged with one count of conspiracy to possess with the intent to distribute and conspiracy to distribute a mixture or substance containing 100 or more grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B) & 846. Indictment (d/e 9). Vaughn filed the pending Motion to Suppress on April 21, 2010.

As a threshold matter, the Court must consider whether to hold an evidentiary hearing on Vaughn's motion. The Court directed the parties to specifically address this issue, and they have done so, with both sides indicating that an evidentiary hearing is not necessary. See Text Order, dated May 5, 2010; Text Order, dated April 23, 2010. Although he initially requested a hearing on his Motion, in his reply, Vaughn concedes that the underlying facts are, for the most part, undisputed. Reply to Government's Response to Defendant's Motion to Suppress (d/e 16) (Reply), p. 4. Additionally, as Vaughn acknowledges, the challenges he raises are legal, rather than factual, in nature. Id. Thus, Vaughn's Reply represents that, under United States v. McGaughy, an evidentiary hearing is not necessary. Id. (citing McGaughy, 485 F.3d 965, 969 (7th Cir. 2007)). The Court agrees.

The defendant in McGaughy raised arguments similar to those at issue here. McGaughy was arrested and charged with being a felon in possession of a firearm after police discovered two firearms in his possession during the execution of a search warrant for an apartment belonging to McGaughy's girlfriend. McGaughy, 485 F.3d at 967. Specifically, McGaughy asserted that the statements of an informant, which provided the substance of the complaint for the search warrant for the apartment, were insufficient to establish probable cause. Id. The district court denied McGaughy's motion to suppress without holding an evidentiary hearing. McGaughy was subsequently convicted following

a jury trial. He appealed his conviction, asserting that the district court erred in denying his motion to suppress without first conducting an evidentiary hearing. Id. at 968.

The Seventh Circuit affirmed McGaughy's conviction. In doing so, the Court noted that evidentiary hearings on motions to suppress "are not required as a matter of course" and instructed as follows:

> a district court need conduct a hearing only when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion. We have emphasized the necessity of materiality in any factual disputes that are presented to the district court as a predicate for an evidentiary hearing.

McGaughy, 485 F.3d at 969 (internal quotations and citations omitted). Applying this standard to the instant case, it is clear that no evidentiary hearing is necessary because the material facts are undisputed. The Court turns its attention to those undisputed facts, which are taken from the affidavit of Drug Enforcement Administration (DEA) Special Agent Scott Giovannelli that was filed in support of the criminal complaint in the instant case. Criminal Complaint (d/e 2), p. 2-6 (Giovannelli Aff.).[1]

---

[1] Vaughn's Motion to Suppress incorporates by reference Giovannelli's affidavit "in haec verba" or verbatim. Motion to Suppress, ¶ 4. Additionally, Special Agent Giovannelli appears before this Court on a regular basis, and the Court deems him to be extremely credible.

In November 2009, law enforcement officials initiated a heroin investigation involving Vaughn's co-defendant, Jenell Moore, and others in Springfield, Illinois. Agents conducted a controlled purchase of heroin by a confidential source from Moore and, subsequently, obtained a search warrant for Moore's residence on January 6, 2010. On January 6, 2010, agents established surveillance of Moore's residence and observed Moore enter a vehicle with a female and depart the area. A short time later, agents detained Moore. Agents informed Moore of the heroin investigation and said that they would like to speak with him. Moore indicated that he understood what the agents were talking about and that he was willing to cooperate with the investigation.

Moore was transported to the DEA's Springfield Resident Office, where he was advised of his <u>Miranda</u> rights. Moore agreed to be interviewed by the agents. Moore stated that his current source of supply for heroin was "Stanley" a/k/a "Smiley," an individual later positively identified by Moore as Defendant Vaughn. Moore informed the agents that Vaughn had made multiple trips from Chicago to Springfield to supply Moore and others with heroin. Moore reported that he had been obtaining large quantities of heroin from Vaughn since the summer of 2009.

Moore told the agents that Vaughn was going to deliver some heroin to Moore on that very day. According to Moore, Vaughn was supposed to be bringing fifty to one hundred grams of heroin to Springfield, a portion of which

would be supplied to Moore. Moore indicated that the heroin would either be on Vaughn's person or in his vehicle. Although Vaughn traveled to Springfield in different vehicles, Moore believed that Vaughn would be using a black four-door Pontiac on the instant trip. According to Moore, this was the vehicle Vaughn had used on his last trip to Springfield. Agents had observed a vehicle matching this description, bearing an Illinois registration 9514816, at Moore's residence on December 30, 2009. At that time, agents observed Moore and another black male use the Pontiac to deliver heroin to a confidential source and others in Springfield.

Moore gave the agents Vaughn's cellular telephone number. Moore agreed to place a series of recorded telephone calls to Vaughn in an attempt to ascertain Vaughn's whereabouts. At approximately 7:28 p.m. on January 6, 2010, Vaughn called Moore and indicated that he would be arriving in Springfield in a little while. "Moore and Vaughn spoke by telephone a couple times." Giovannelli Aff., ¶ 11. During one call, Vaughn stated that his telephone battery was dying, but that he was still planning on meeting with Moore.

Moore informed the agents that Vaughn knew where Moore lived and that Moore believed it might be possible for Vaughn to arrive at Moore's residence without telephoning Moore in advance. Agents again established surveillance at Moore's residence. "At approximately 11:14 p.m., agents observed a black Pontiac; later confirmed as the same Pontiac previously seen by agents, arrive at

Moore's apartment building and park." Giovannelli Aff., ¶ 12.  Agents observed a black male enter the apartment building, walk to the second floor, and appear to knock on Moore's door.  Moore, who was with the surveillance agents, identified the black male as Vaughn.  A short time later, agents observed Vaughn exit the building and return to the Pontiac.  Vaughn remained in the parking lot.

At approximately 11:24 p.m., Vaughn was arrested in the parking lot.  A search of Vaughn's person uncovered a silver duct-taped package in the sleeve of Vaughn's jacket.  The package contained approximately seventy-five grams of an off-white powdery substance.  A presumptive field test on the powder was positive for heroin.

Vaughn was transported to the DEA's Springfield Resident Office, where he was advised of his Miranda rights.  Vaughn indicated that he wished to speak to agents but that he was unwilling to sign a waiver form.  Vaughn stated that he knew he was in trouble for what he had done and acknowledged his past criminal record.  Vaughn stated that he obtained the heroin in the package in Chicago for approximately $3,750.00.  Vaughn informed the agents that all of the heroin was to be delivered to Moore.  Vaughn stated that he had brought heroin to Moore on three or four prior occasions during the previous six months, in small quantities.  Vaughn could not recall the amounts.  Vaughn stated that Moore had another source of supply for heroin, but Vaughn was unable to provide any specific information about this source.

## II.  ANALYSIS AND CONCLUSIONS OF LAW

Vaughn asks the Court to suppress the following: (1) all physical evidence "seized from [his] person and possibly the automobile" and (2) all statements made by Vaughn to law enforcement officials at the time of, and subsequent to, his arrest.  Motion to Suppress, p. 4-5.  Vaughn asserts that the warrantless searches of his person and vehicle violated the Fourth Amendment of the U.S. Constitution.  Vaughn further asserts that his statements to law enforcement officials flowed from the allegedly unconstitutional searches and thus constitute fruit of the poisonous tree.  See Wong Sun v. United States, 371 U.S. 471 (1963).

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A defendant seeking to suppress evidence because of a violation of the Fourth Amendment must first establish that he has standing to challenge the search or seizure. United States v. Sweeney, 688 F.2d 1131, 1143 (7th Cir. 1982).  Once the defendant has established standing in a case in which law enforcement officers conducted a warrantless search, the burden of proof shifts to the government, because warrantless searches are "per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967).  At that point, the Government bears the burden of establishing

by a preponderance of the evidence that an exception to the warrant requirement applies. United States v. Basinski, 226 F.3d 829, 833 (7th Cir. 2000). With these standards in mind, the Court turns to Vaughn's arguments.

Clearly, Vaughn has standing to challenge the search of his person. Thus, the burden shifts to the Government to establish, by a preponderance of the evidence, that an exception to the warrant requirement applies. The Government contends that the officers had probable cause to arrest Vaughn and that the search of Vaughn's person was a valid search incident to that arrest. The Court agrees.

"'In order to make an arrest without a warrant, the police must have probable cause, under the totality of the circumstances, to reasonably believe that a particular individual has committed a crime.'" United States v. Oliva, 385 F.3d 1111, 1114 (7th Cir. 2004) (quoting United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir. 1995)). "Probable cause exists if police officers possess knowledge from reasonably trustworthy information that is sufficient to warrant a prudent person in believing that [the] suspect has committed, or is committing, a crime." United States v. Venters, 539 F.3d 801, 807 (7th Cir. 2008) (internal quotations and citations omitted). "[P]robable cause can be established by an informant's tip along with corroboration by police work." United States v. Banks, 405 F.3d 559, 570 (7th Cir. 2005). As the Supreme Court has recognized, if "an informant is shown to be right about some things, he is probably right about other

facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." Alabama v. White, 496 U.S. 325, 331 (1990).

Vaughn argues that the information known to law enforcement at the time of his arrest was insufficient to establish probable cause and that the agents failed to corroborate the information received from Moore. These arguments are unpersuasive. Because Moore was the primary source of information regarding Vaughn, the reasonableness of law enforcement's reliance on his information is a paramount issue in the case, and the Court addresses it first. In assessing the reliability of information that an informant has provided, the Court must examine "(1) whether the informant made first-hand observations; (2) the degree of detail provided by the informant; (3) whether independent information corroborates the informant; and (4) whether the informant has proven to be reliable in past dealings with law enforcement." United States v. Harris, 585 F.3d 394, 401 (7th Cir. 2009).

In the instant case, the first three prongs weigh strongly in favor of finding Moore to be reliable. The information that Moore provided was detailed and based on first-hand observations. He informed agents that Vaughn would be arriving at Moore's residence that evening with heroin and that he would likely be driving a black Pontiac. Moore's information was also self-incriminating; he admitted that he had been obtaining large quantities of heroin from Vaughn since the summer of 2009. See United States v. Washburn, 383 F.3d 638, 642 (7th Cir.

2004) (recognizing inculpatory nature of informant's statement as indicator of reliability).  Moore's information was corroborated by the recorded telephone calls, which revealed that Vaughn was traveling to Springfield, and by the fact that Vaughn arrived as predicted.  See Oliva, 385 F.3d at 1114 ("before stopping [defendant], the agents observed him taking the actions which the informant had said to expect.  That is exactly the type of corroboration that counts.").  Additional corroboration came from the fact that officers had previously observed Moore and another black male use the black Pontiac to deliver heroin to a confidential source and others in Springfield.  Furthermore, Moore was a known informant, who was present with officers during the surveillance; thus, Vaughn's reliance on cases involving tips from anonymous sources is inapposite.  Although there is no indication that Moore had proven to be reliable in prior dealings with law enforcement, weighing all of the relevant factors, it is clear that the officers were justified in relying on Moore's information in making their probable cause analysis.

>    Thus, at the time of Vaughn's arrest, law enforcement officials knew the following facts.  Moore was involved in heroin trafficking and had been the target of a controlled buy.  Moore identified Vaughn as his source for heroin and told agents that Vaughn would be arriving at Moore's residence with a delivery of heroin that evening.  Moore identified the type of vehicle that Vaughn would likely be driving and provided agents with Vaughn's cellular telephone number.  Agents

recorded telephone calls between Moore and Vaughn which corroborated the information that Vaughn was traveling to Springfield that day and planned to meet with Moore.  Vaughn arrived at Moore's residence, as predicted, in the black Pontiac and was positively identified by Moore, who was with surveillance agents.  Agents had previously observed Moore and a black male use the Pontiac to deliver heroin in Springfield.  Agents observed Vaughn enter Moore's apartment building and knock on Moore's door before returning to the Pontiac.  Given all of the information available, law enforcement officials had a reasonable basis for believing that Vaughn was transporting heroin.  See, e.g., Oliva, 385 F.3d at 1115.  Therefore, probable cause to arrest Defendant Vaughn existed.

      Because officers had probable cause to arrest Vaughn, they could perform a contemporaneous search of his person.  It is well-established that law enforcement officers may search the person of an arrestee incident to arrest without a warrant.  Chimel v. California, 395 U.S. 752, 762-63 (1969).  Additionally, because Vaughn's arrest was supported by probable cause, his alternative argument that the search of his person violated Terry v. Ohio, 392 U.S. 1 (1968), which allows for investigatory stops and protective pat-down searches based on a lesser "reasonable suspicion" standard, fails.  There is no basis to suppress physical evidence discovered during the search of Vaughn's person, and the Motion to Suppress should be denied in this respect.

Vaughn's argument relating to a search of his vehicle is not well-developed.  The record is devoid of evidence of the facts surrounding any search of an automobile, and there is nothing to indicate what, if any, physical evidence resulted from an automobile search.  Vaughn hinges his argument regarding the vehicle search on the premise that the search was unlawful because there was not probable cause to support Vaughn's arrest, citing Chimel v. California, 395 U.S. 72 (1969), and New York v. Belton, 453 U.S. 454 (1981).  The Court is cognizant of the fact that the law with respect to a vehicle search incident to a lawful arrest of a recent occupant has recently changed.  In Arizona v. Gant, the United States Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Gant, 129 S.Ct. 1710, 1723 (2009).  However, Vaughn's submissions do not mention Gant or attempt to point out any shortcomings related to the standard enunciated in it.  The Court "need not try to imagine every plausible argument that could be extracted from [Defendant's submissions]".  United States v. Kirkland, 567 F.3d 316, 322 (7th Cir. 2009).  Vaughn's argument that the vehicle search was unlawful because there was not probable cause to support his arrest fails because probable cause

for the arrest existed, as set forth above. Furthermore, the facts outlined above together with Moore's statement to law enforcement that Vaughn would be carrying heroin on his person or in his vehicle support a reasonable belief that the Pontiac would contain evidence of heroin trafficking such that any search of the vehicle would be lawful under Gant. The Motion to Suppress should be denied to the extent that it challenges any search of Vaughn's vehicle at the time of his arrest.

Vaughn's request to suppress statements he made to law enforcement officials also hinges on the argument that his arrest was unlawful. However, as set forth above, the warrantless arrest was supported by probable cause; thus, Vaughn's fruit of the poisonous tree argument necessarily fails. Because Vaughn fails to develop any other basis for suppressing the statements, his Motion to Suppress should be denied.

### III. CONCLUSION

For all the above reasons, I recommend that Defendant Stanley Vaughn's Motion to Suppress Evidence (d/e 14) be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within 14 days after being served by ECF with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a

waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.


ENTER: May 24, 2010

                                      *s/ Byron G. Cudmore*
                                  _____
                                        BYRON G. CUDMORE
                             UNITED STATES MAGISTRATE JUDGE